[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] CONSOLIDATED DECISIONS
The above-captioned matters are companion cases before the Court on appeal from a single decision of the Zoning Board of Review for the Town of Westerly ("Zoning Board" or "Board"). Both cases appeal the Board's granting of a special use permit to B.S.I., Inc. (BSI), in order to operate a motel. It is uncontested that Appellants Watch Hill Fire District ("WHFD"), Northern Trust Company ("Northern Trust"), and Hubbard Phelps ("Phelps") as abutting landowners,[1] are parties aggrieved by the Board's decision.[2] Because both appeals contest the propriety of this single decision based solely upon statutory and ordinance provisions, this Court, in furtherance of judicial economy and to promote clarity, consolidated these cases upon motion entered on March 16, 2004.
 FACTS AND PROCEDURE
BSI owns a parcel of real estate known as Lot 1 on Assessor's Plat Map 185. Lot 1 is located on Bay Street in the Watch Hill area of Westerly within the zoning district "Shore Commercial — Watch Hill." Hotels, motels, and inns are permitted uses in this district only with a special use permit. BSI has been attempting to develop this parcel for some time and has submitted various applications for development. In January 2002, BSI filed an application with the Board for a special use permit for the purpose of constructing a 22-unit motel on the property. After numerous evidentiary hearings, the Board voted four to one to grant the special use permit on March 5, 2003. On March 31, 2003, WHFD filed an appeal with this Court pursuant to G.L. § 45-24-69, followed by the separate appeal of Northern Trust on April 1, 2003. The cases have been consolidated for argument and decision. The Appellants make numerous arguments, which will be addressed individually. Additional facts will be supplied as necessary.
 STANDARD OF REVIEW
This Court's review of the Zoning Board's decision is governed by G.L. § 45-24-69(D) which provides that:
 [the] court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the Appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 1. In violation of constitutional, statutory, or ordinance provisions;
 2. In excess of the authority granted to the zoning board of review by statute or ordinance;
 3. Made upon unlawful procedure;
 4. Affected by other error of law;
 5. Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 6. Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a zoning board decision, the court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Salve Regina College v. Zoning Board ofReview of Newport, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v.Zoning Board of Warwick, 122 R.I. 241, 245; 405 A.2d 1167, 1170 (1979)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 508; 388 A.2d 821, 824-25(1978)). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New England Naturist Association v. George,648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v.International Association of Firefighers, AFL-CIO, Local 1589,119 R.I. 506, 508; 380 A.2d 521, 522 (1977)). This Court should exercise restraint in substituting its judgment for the Zoning Board and is compelled to uphold the Zoning Board's decision if the Court conscientiously finds that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257, 260 (R.I. 1985) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)).
 ANALYSIS.
A. Merger By Use.
Appellants initially contend that the Board's decision violated statutory provisions, exceeded its authority, and was made upon unlawful procedures because the Board proceeded as if Lot 1 had not been merged by use with an adjacent lot — Lot 101. Appellants aver that a 1996 Superior Court decision — Watch Hill Fire District v. Westerly Zoning Board ofReview, W.C. No. 94-414, 1996 R.I. Super. LEXIS 144 (R.I. Super. Ct. 1996)[3] — also involving Lot 1, resulted in this merger. During the hearings before the Board, the Appellants made a motion to the Board to dismiss BSI's application on the ground that the lots had merged. The Board denied that motion, observing that the Superior Court decision did not "categorically state" that the lots had merged.
Appellants read a great deal into the concise, direct 1996 decision. The 1996 Superior Court decision clearly did not hold that Lot 1 and Lot 101 "merged by use." In fact, the decision never mentions this phrase. Moreover, the Rhode Island Supreme Court has not adopted the concept of merger by use, either explicitly or by implication. The Rhode Island General Assembly has not adopted the concept of merger by use, even though many of the zoning laws were revised in The Zoning Enabling Act of 1991, P.L. 1991, ch. 351.
The 1996 decision did not preclude the applicant from constructing a motel on the property.[4] The decision merely required BSI to account for a portion of the parking requirements of the adjacent Lot 101. Consequently, this Court finds that Lots 1 and 101 have not merged by use as the result of the 1996 decision.
The Appellants attempt to evade this weakness in their argument by urging this Court to find that BSI is barred by judicial estoppel from challenging the Appellants' position that the lots have merged by use. Appellants aver that in the wake of the 1996 decision, BSI took the position in its petition to the Rhode Island Supreme Court for certiorari that the 1996 decision applied the doctrine of merger by use. Appellants rely on D H Therapy Assocs. v. Murray, 821 A.2d 691 (R.I. 2003), to support their position that BSI should not be permitted to now claim that the 1996 decision did not result in the merger by use of Lots 1 and 101. Appellants misapply the doctrine of judicial estoppel.[5] First, it is important to note that BSI was merely stating its interpretation of a judicial decision in seeking review of that decision. Secondly, in D HTherapy, the plaintiff was estopped from making arguments inconsistent with sworn statements which it previously made to the Federal Court
 Having vouched for that testimony and for the reasonableness and accuracy of the bill in the federal proceeding, we hold that defendant is estopped from disputing such evidence in the matter before us now. Id. at 693
In determining whether to invoke judicial estoppel in a particular case, courts consider whether the "party seeking to assert an inconsistent position would derive an unfair advantage . . . if not estopped." New Hampshire v. Maine, 532 U.S. 742 at 751, 121 S. Ct. 1808 at 1815, 149 L. Ed. 2d 968 at 978; Scarano v. Central R. Co. of New Jersey,203 F.2d 510, 513 (3rd Cir. 1953). Courts inquire whether the party who has taken an inconsistent position had "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create `the perception that either the first or the second court was misled.'" NewHampshire v. Maine, 532 U.S. at 750, 121 S. Ct. at 1815,149 L. Ed. 2d at 978 (quoting Edwards v. Aetna Life Insurance Co.,690 F.2d 595, 599 (6th Cir. 1982)); see also Wabash Grain, Inc. v.Smith, 700 N.E.2d 234, 237 (Ind.Ct.App. 1998). Here, BSI will not derive an unfair advantage nor did they succeed in persuading a court to accept their earlier position. Indeed, by denying the application for the writ, the Rhode Island Supreme Court took no position on BSI's contentions.
Thus, the Zoning Board's conclusion on the merger of use issue did not constitute an abuse of discretion, was not affected by error of law, was not arbitrary or capricious, and was not in violation of constitutional or statutory provisions.
B. The Traffic Study.
Section 7.7 of the Westerly Zoning Ordinance sets forth the requirements of an application for a special use permit:
 The form and such data and/or evidence which comprise such an application shall be as set for the in forms provided by the zoning official. Said form and the data and/or evidence required thereby are incorporated herein and made a part of this ordinance. Westerly Zoning Ordinance, Article VII, § 7.7(a.).
The Checklist for Special Use Permit states:
 The application for Special Use Permit . . . must be accompanied by the following information:
 . . .
 6. Traffic Study addressing the potential impacts of the proposed activity. Appendix of Plaintiff Watch Hill Fire District in W.C. No. 03-181, p. 202.
Based on this, Appellants contend that a more extensive traffic impact study must take place.
Obviously, the ordinance does not specify what must be considered in the traffic study. As the ordinance does not clearly define what a traffic study must consist of, the Zoning Board is given wide discretion to determine the sufficiency of the study. Henn v. Westerly Zoning Boardof Review, 632 A.2d 643, 645 (R.I., 1993). In the case at bar, the Zoning Board did not stray far in exercising its discretion. Its interpretation was reasonable and appropriate, in light of the extensive record and what would reasonably be expected. A more extensive "traffic impact analysis" is required by other provisions of the local code, hence it is reasonable to conclude that an abbreviated study be acceptable for a special use application.
The record indicates that Francis Perry, a traffic engineer, testified that the study was satisfactory. The Board cited this expert's analysis extensively. July 9, 2002 Tr. at 72-75, and August 27, 2002 Tr. at 68-71. The Board discussed the traffic impact extensively in paragraphs 3 and 4 of its March 5, 2003 decision approving the special use permit and hence the Board was satisfied that any traffic study requirement was fulfilled and the traffic impact would not be adverse. The Zoning Code specifies that the "Board shall be satisfied." Westerly Zoning Code Article VII § 7.7 (b). In approving the application, obviously the Board was satisfied, and its judgment was substantiated by sufficient evidence on the record and a correct legal analysis.
Thus, there is competent and substantial evidence on the record to support the Zoning Board's decision that the applicants adequately provided a traffic study and addressed the study's concerns.
C. Off-Street Parking.
Clearly, the local Board struggled to meet and comply with the 1996 Superior Court decision. The transcript is replete with references to the decision which dealt extensively with the adequacy of off-street parking. The Zoning Board's findings of facts, contained it its March 5, 2003 decision granting the special use permit, indicate that the "proposal requires 94 parking spaces and has 97 parking spaces. The BSI, Inc. parking plan complies with the Westerly Zoning Ordinance." March 5, 2003 Zoning Board Decision at 3. The parties do not dispute that the proposed use for Lot 1 requires a total of 40 spaces under the Westerly Zoning Ordinances.
The Appellants argue that 54 parking spaces on the subject lot have already been apportioned by the Westerly Zoning Board for a neighboring lot. (See the 1996 decision). However, the former Board did not seem concerned with longevity of the parking space rental because the neighbor's lease for the spaces expired in 2002. September 24, 2002 Zoning Board Tr. at 81-86. It is therefore reasonable and appropriate for this applicant to use the spaces as a basis for this application, and to serve the land they are on. If the Appellants, the town or any other party objects to the permitted use on the neighboring lot, surely this Superior Court appeal is not the forum to rectify that issue.[6]
The 1996 decision indicates that the neighbor needs 27 spaces off of its own lot, to comply with the code requirements. The Appellants here argue that this number should now be 54. Nevertheless, the subject proposal provides for 97 parking spaces on Lot 1. Either computation leaves this applicant 40 required spaces. Accordingly, the Board found sufficient parking existed, on site.
Thus, there is competent and substantial evidence on the record to support the Zoning Board's decision that the applicants adequately addressed the requirements of off-street parking.
D. Quantity of Residential Structures.
Appellants claim that the multiple residential buildings on the lot is inconsistent with the local code. This is a mixed use application, so Section 2.1 of the Zoning Ordinances applies. A group of structures, such as the group proposed, complies with the ordinance.
Thus, the Board properly concluded that the number of buildings proposed is consistent with the law, including the Zoning Ordinances, and within the authority of the Zoning Board, not affected by an error of law or made upon unlawful procedure.
E. Compatibility with the Neighborhood and Consistency with Master Plan.
Michael Lenihan, a local realtor, was qualified as an expert for certain real estate issues during the Zoning Board proceedings. He found the proposed use to be compatible with the neighborhood. July 19, 2002, Tr. at 16-17. The Board relied on his testimony and concurred with him explicitly in its decision. Decision at 4, ¶ 1. As the decision is supported by substantial evidence in the record and exercises restraint in substituting its decision for that of the Board, this Court will concur with this conclusion.
Mr. Lenihan further testified that the proposal was consistent with the Master Plan. July 9, 2002 Zoning Board Tr. at 13-14. The Zoning Board agreed concluding "The purposes of this ordinance, and as (sic) set forth in the comprehensive plan shall be served by said special use permit," Decision at 5, ¶ 5.
Thus, there is competent and substantial evidence on the record to support the Zoning Board's decision that the applicants adequately addressed the need to make the proposal consistent with the neighborhood and compatible with the master plan.
The statutory scheme of the Rhode Island zoning laws vests significant powers in local bodies to consider zone changes. The intent of the legislature is explicit:
 Legislative findings and intent. —
 . . . (b) Therefore, it is the intent of the general assembly:
 (1) That the zoning enabling authority contained in this chapter provide all cities and towns with adequate opportunity to address current and future community and statewide needs;
 (2) That the zoning enabling authority contained in this chapter require each city and town to conform its zoning ordinance and zoning map to be consistent with its comprehensive plan developed pursuant to chapter 22.2 of this title;
 (3) That the zoning enabling authority contained in this chapter empower each city and town with the capability to establish and enforce standards and procedures for the proper management and protection of land, air, and water as natural resources, and to employ contemporary concepts, methods, and criteria in regulating the type, intensity, and arrangement of land uses, and provides authority to employ new concepts as they may become available and feasible;
 (4) That the zoning enabling authority contained in this chapter permit each city and town to establish an economic impact commission. . . . R.I.G.L. § 45-24-29.
The legislature gives significant deference to cities and towns to determine zoning and planning issues. One of the most important goals is obviously to provide local control because localities are best suited to determine the compatibility of the neighborhood. They are just as qualified to determine consistency with the locality's master plan.
F. Power to Sue
BSI has alleged, in its Motion for Summary Judgment against the Watch Hill Fire District, that the WHFD lacks the capacity to file an action herein. The WHFD has a legislative charter (via a special act, for the district itself, enacted by the Rhode Island General Assembly). The act states that the district is empowered to "sue and be sued. . . ." (Act Incorporating the Watch Hill Fire District, Rhode Island Acts and Resolves, January, 1941, § 33) without limitation. This Court will not imply a limitation where the legislature did not do so.[7]
G. Failure of Notice
BSI also proffers that the case numbered W.C. No. 2003-185 should be dismissed because of the failure of the appellant to provide notice to certain abutters as mandated by G.L. §§ 45-24-69.1 and 45-24-53. Our high court has recently declined to construe the statute, to deprive the Superior Court of appellate jurisdiction, absent a showing of prejudice.Jeff Anthony Properties v. Zoning Board of Review of North Providence,853 A.2d 1226 (R.I., 2004).[8] As no prejudice was demonstrated here (indeed, all parties were informed of the proceeding and were entitled to participate in the consolidate case had they requested) the Court concludes there was no prejudice. BSI's motion to dismiss is therefore denied.
 CONCLUSION.
After reviewing the entire record, this Court affirms the decision of the Zoning Board to grant the applicants a special use permit. The Court finds that the Zoning Board's decision is supported by the reliable, probative and substantial evidence of the record. Furthermore, the Court also finds the Board's decision did not constitute an abuse of discretion, was not affected by error of law, was not arbitrary or capricious, and was not in violation of constitutional or statutory provisions.
For the reasons stated, the appeals are denied and dismissed, and the decision of the Westerly Zoning Board is affirmed. Counsel may submit appropriate judgments and orders.
[1] The Watch Hill Fire District owns a parcel of land across the street from BSI's property. Northern Trust and Phelps own residential property located immediately adjacent to BSI's parcel.
[2] This Court, where appropriate, will refer to all plaintiffs merely as Appellant or Appellants.
[3] For ease in citing a case with a similar name, this decision will be referred to as the "1996 decision".
[4] In a prior decision involving the adjacent Lot 101, the Board had allowed the applicants for Lot 101 to count parking spaces located on Lot 1. The 1996 Watch Hill Fire District decision, supra, simply required BSI to continue to allocate those spaces to Lot 101, and thus, BSI needed additional spaces to construct the motel. BSI's current special use permit addresses these parking concerns, as noted below. As the "merger by use" argument is more legal than factual, this Court will not provide an exhaustive summary of the evidence presented below, relative to this issue. Little evidence is relevant to this point though the Court has reviewed the entire record and the lengthy memoranda provided by counsel.
[5] Judicial estoppel focuses on the relationship between the litigant and the judicial system as a whole. D H Therapy Assocs. v. Murray,821 A.2d 691, 693 (R.I. 2003) (citing 28 Am.Jur.2d Estoppel and Waiver § 34 (2000)).
[6] This court cannot adjudicate the rights of the neighbor (WHI, Inc. was the owner of the Watch Hill Inn, on the neighboring lot) to use its lot when it is not even a party to this proceeding.
[7] Legislative charters, so-called, are corporations established via a special act of the Rhode Island General Assembly. As such, they tend to be crafted around the circumstances of the particular entity. While fire districts may play a limited role at present, their historical role has been enormous and they were considered an active entity in local villages and other communities which might have different concerns that the town or city at large. Often their powers are quite broad, for example, districts are empowered to tax and to elect their governing officials.
[8] "Absent clear statutory language that the ten-day notice requirement is jurisdictional, we conclude that a party's failure to comply does to automatically require that it forfeit its right to appeal an adverse decision of zoning board." Jeff Anthony, 853 A.2d at 1232.